## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LESLIE R. SMITH, as** | ) | |
| **Administratrix of the Estate of** | ) | |
| **Henry Smith, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:09-CV-658-VEH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KENNETH A. BRAZEE, _et al._,** | ) | |
| | ) | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION</u>

On December 23, 2009, this action was reassigned to the undersigned judge for all further proceedings after the Honorable Inge P. Johnson, United States District Judge for the Northern District of Alabama, recused herself as the presiding judge. As with any case assigned to this court, the undersigned has an obligation to ensure that the court has subject matter jurisdiction before proceeding to the merits. Upon reviewing the pleadings, motions, and other papers of record, this court _sua sponte_ finds that it lacks subject matter jurisdiction over this dispute for the reasons more fully explained herein.[1]

---

[1] The parties were given the option of providing additional oral argument to the court regarding the issue of subject matter jurisdiction; however, they declined to do so.

I.    **Facts[2] and Procedural History**

This lawsuit was commenced in the Circuit Court of Jefferson County, Alabama, on February 27, 2009.  According to the state court Complaint,

> On or about December 31, 2008, Plaintiff Henry J. Smith was operating a motor vehicle upon the roadway of U.S. Highway 78 in a western direction . . . in Jefferson County, Alabama.  At approximately the same time and place, Defendant [Kenneth A.] Brazee, individually and while acting as an agent, servant, and/or employee of Defendant Schneider [National Bulk Carriers, Inc.] . . . was operating a commercial motor vehicle, when he negligently and wantonly failed to yield the right of way to the Plaintiff and caused his commercial motor vehicle to make impact with Plaintiff's vehicle . . . .   As a result of the subject collision, Plaintiff suffered serious bodily injury, property damage, and other consequential and incidental damages, including but not limited to lost present and future wages, and future medical expenses.

(doc. 1, pp. 16-17).

Mr. Smith asserted various state law claims under Alabama law against Defendants Brazee and Schneider National Bulk Carriers, Inc. (the "Removing Defendants").   Also, the state court Complaint clearly sets out a claim for underinsured/uninsured motorist coverage under Alabama law (Count V) against Alfa Mutual Insurance Company ("Alfa"), Mr. Smith's underinsured/uninsured motorist insurer.

---

[2] The "facts" have been construed in a light most favorable to Plaintiff as of the date of removal.  *See, e.g., Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (noting that for a removing party to establish federal jurisdiction, "the critical time is the date of removal.") (citing *Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1289-91 (11th Cir. 2000)).

Mr. Smith was an Alabama citizen.[3]   Defendant Schneider National Bulk Carriers, Inc. is alleged to be a citizen of either Nevada or Wisconsin.   Defendant Brazee is allegedly a citizen of California.   Defendant Alfa is a citizen of Alabama.

On April 1, 2009, the Removing Defendants removed the case to federal court without the consent of Alfa.   The Removing Defendants contend that this Court possesses jurisdiction under the diversity statute despite the undisputed fact that Plaintiff and Defendant Alfa are both citizens of the State of Alabama.[4]   *See* 28 U.S.C. § 1332(a).   The Removing Defendants argue that the court need not consider the citizenship of Alfa because it was fraudulently joined as a party defendant.   At the time the case was removed, Alfa had been served but had not filed in the state court an answer or a notice of its intent to opt-out of this litigation.

Plaintiff timely filed a motion to remand in which he cited two "defects" in the

_____

[3] *Nota bene*: On May 6, 2009, Mr. Smith died.  (doc. 26).  Leslie R. Smith, as Administratrix of the Estate of Henry Smith, deceased, was substituted as the named plaintiff to this action on July 24, 2009 (doc. 28), and she amended the operative Complaint to include a claim of wrongful death under Alabama law.  On the date of removal, Mr. Smith was still alive.  This court notes that the remand of this case at this juncture does not affect the timely and proper substitution of Leslie R. Smith, as Administratrix of the Estate of Henry Smith, deceased, as the plaintiff to this action nor does it have any impact on the timely assertion of her claim of wrongful death under Alabama law.

[4] *See* doc. 1 ("Notice of Removal").  Any civil action instituted in a state court may be removed to a federal forum, provided the district court has original jurisdiction over the controversy.  *See* 28 U.S.C. §§ 1332, 1441(a); *see also, e.g., Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  There being no federal question presented in Plaintiff's complaint, the Removing Defendants predicated removal on diversity jurisdiction.

Removing Defendants' Notice of Removal.  (doc. 5, p. 2).  First, Plaintiff challenges the Removing Defendants' contention that Alfa was fraudulently joined.  Second, Plaintiff contends that the Notice of Removal is procedurally deficient because Alfa did not consent to the removal of this case.  On April 20, 2009, Judge Johnson entered a scheduling order allowing all Defendants fourteen days to respond to Plaintiff's motion.  Alfa filed a response.  The Removing Defendants did not.

Alfa argued that the motion to remand was due to be denied because, although it had not done so at the time of removal, Alfa decided to opt-out of this litigation (doc. 8) and to consent to the removal to federal court.  (doc. 9).  Judge Johnson summarily denied Plaintiff's motion to remand without a written opinion on April 27, 2009, and granted Alfa's motion to opt-out.  (doc. 11).

On May 1, 2009, Plaintiff filed a motion for reconsideration, which Judge Johnson treated as a renewed motion to remand.  (doc. 13).  Four days after the motion was filed, Judge Johnson entered a written opinion denying Plaintiff's motion. (doc. 14).  Therein, the court explained that it considered Alfa to be "at best a nominal party to this action and at worst fraudulently joined solely for the purpose of defeating removal jurisdiction." (doc. 14, p.2).  The court further stated that, had Alfa not sought to opt-out of this litigation, the court would have *sua sponte* "dismissed the plaintiff's claims against Alfa anyway." (doc. 14, p.7).

Judge Johnson did not reach the issue of whether the Notice of Removal was procedurally deficient on the basis that Alfa did not consent to removal. That omission, however, was of no consequence because the court found that Alfa was a "nominal party," and such parties are not required to consent to removal. *See*, *e.g.*, *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) ("Early in its history, this Court established that the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") (internal citations omitted); *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, International Printing Pressmen Assistants' Union of North America*, 427 F.2d 325, 326-27 (5th Cir. 1970)[5] ("The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires that all defendants join in the removal petition. However, nominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal.") (internal citations omitted); *Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (S.D. Fla. 1983) ("[N]ominal or formal parties, unknown defendants, and defendants fraudulent joined may be 'disregarded in

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

determining whether the removing defendants have complied with § 1446(a).'") (quoting *McKinney v. Rodney C. Hunt Co.*, 464 F. Supp. 59 (W.D. N.C. 1978), and citing *Tri-Cities Newspapers, Inc.*, *supra*).

The case has proceeded through the discovery process, and it is presently set for trial on March 1, 2010.[6,7]

Based upon the undersigned's *sua sponte* reconsideration of Judge Johnson's denial of Plaintiff's motion to remand and motion to reconsider, for the reasons stated hereinafter, this court will vacate Judge Johnson's previous Orders denying Plaintiff's motion to remand this case to state court, will grant such motion, and will remand the dispute.

## II.   Discussion

District courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.,* 168 F.3d 405, 409 (11th

---

[6] On January 6, 2010, all unexpired deadlines were stayed pending resolution by this court of the jurisdictional question.  (doc. 98).

[7] The March 1, 2010, trial date was set by Judge Johnson.  The undersigned has advised the parties that, because the defendants represent that they intend to file motions for at least partial summary judgment, this case will not be set for trial before the undersigned before August of this year.

Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)); *see also, e.g., Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1260-61 (11th Cir. 2000) ("Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases.") (citing *University of South Alabama*, 168 F.3d at 409-10).[8]

Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)); *see also, e.g., Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (stating that "a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises"); *Galindo-Del Valle v. Attorney General*, 213 F.3d 594, 598 n.2 (11th Cir. 2000) (observing that federal courts are "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."); *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th

---

[8] Despite the fundamental jurisdictional proposition stated in text, the Supreme Court has said that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976); *see also, e.g., Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716 (1996); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15 (1983); *First Franklin Financial Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998); *Lops v. Lops*, 140 F.3d 927, 942 (11th Cir. 1998).

Cir.1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."); *Kutner v. Kutner*, 656 F.2d 1107, 1110 (5th Cir. Unit A Sept. 21,1981) ("[I]t is the duty of the court to determine on its own motion whether it has jurisdiction of any case before it."); *Employers Mutual Casualty Co. v. Evans,* 76 F. Supp. 2d 1257, 1259 (N.D. Ala. 1999) ("[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

"[T]here is a presumption <u>against</u> the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (emphasis supplied)).  Removal statutes are strictly construed.  *See, e.g., Miles v. Kilgore*, 928 F. Supp. 1071, 1075 (N.D. Ala. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941); *Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249 (11th Cir. 1985)).  Moreover, "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007).

Importantly, when determining the propriety of removal, this court is limited

to examining the record, pleadings, and evidence as they existed on the <u>date of removal</u>. *See, e.g.*, *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (noting that for a removing party to establish federal jurisdiction, "the critical time is the date of removal.") (citing *Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1289-91 (11th Cir. 2000)).  Subsequent events have no bearing on the jurisdictional question at bar.

In the present case, the Removing Defendants' Notice of Removal presents two issues.  While it is true that the citizenship of fraudulently joined and nominal parties must be disregarded for purposes of establishing diversity jurisdiction; however, the two terms are not synonymous.  Therefore, when assessing the propriety of removal, the first undertaking must be an analysis of whether Alfa was fraudulently joined.  In light of the record and the relevant case law, the answer to that question is that Alfa was not a fraudulently joined defendant.  The second inquiry is whether Alfa was, on the date this action was removed from state court, a "nominal party" to this case.  When viewing the facts and law in a light most favorable to Plaintiff, which this court is bound to do, Alfa is not a nominal party.[9]

---

[9] *Nota bene*:  Because the court agrees with Plaintiff that Alfa was not a nominal party at the time this case was removed, then Alfa's consent was necessary for removal to be proper.  However, because of this court's determination that Alfa is neither a fraudulently joined party nor a nominal party, there is not complete diversity among the parties, and the court lacks subject matter jurisdiction to address the procedural defects in the Notice of Removal.  In other words, the court need not and cannot delve into the matter of whether the Notice of Removal was

## A.     Fraudulent joinder of non-diverse parties

Jurisdiction under 28 U.S.C. § 1332 requires "complete diversity."  The citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See, e.g., Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1564 (11th Cir. 1994) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).  An action may nevertheless be removable if the joinder of non-diverse parties is deemed to have been "fraudulent":  that is, for the purpose of defeating federal jurisdiction.  *See, e.g.*, *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 97 (1921) (holding that a diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779, 782 n.3 (11th Cir. 1989).

The filing of a frivolous or other illegitimate claim against a non-diverse defendant is fraudulent joinder, and a district court must disregard the citizenship of such defendants when assessing the existence of "complete diversity."  *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979).  The doctrine of fraudulent joinder

---

procedurally defective because the Removing Defendants needed Alfa's consent to remove this case.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 84 (1998) (noting that when a court lacks subject matter jurisdiction it "cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit.").  Therefore, the court makes no findings on the procedural defect issue raised by Plaintiff.

thus is a judicially created exception to the requirement that parties be completely diverse, and provides that an action may be removed from state court, despite a lack of complete diversity of citizenship among the parties, if the plaintiff's joinder of a non-diverse party was fraudulent. *See, e.g.*, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of a jurisdictional issue; or (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several, or alternative liability <u>and</u> where the claim against the diverse defendant lacks a common question of law or fact.[10] *Id.  See also Coker*, 709 F.2d at 1440; *Tapscott v. MS Dealer Service Corp.*; 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled as conflicting with prior panel decision on other grounds* by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  If any of these situations are present, the nondiverse defendant has been fraudulently joined and its citizenship should be ignored for purposes of determining jurisdiction. *See*

---

[10] The third type of fraudulent joinder, first recognized by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*; 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled as conflicting with prior panel decision on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), was created in the context of a case where a defendant was joined under Federal Rule of Civil Procedure 20.  The *Triggs* panel later implicitly extended the third type beyond those cases arising under Rule 20, but did so without explanation or discussion.  154 F.3d at 1287.

*id.* The court finds that none of the three situations outlined in *Triggs* is present in this case.

The court will approach its analysis from the perspective of reconsidering a former ruling on Plaintiff's motion to remand.  "In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction."  *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).  Based upon that premise, it has long been the rule that the burden of proving fraudulent joinder rests with the removing defendant.  *See*, *e.g.*, *Coker*, 709 F.2d at 1440.  The claim of fraudulent joinder must be supported by credible, clear, and convincing evidence.  *See Parks v. New York Times*, 308 F.2d 474, 478 (5th Cir. 1962).  "Both parties may submit affidavits and deposition transcripts."  *Coker*, 709 F.2d at 1440 (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Dec. 10, 1981) ("In support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint.")).  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by the parties."  *Id.* at 1380.  "While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling

on a motion for summary judgment under FED. R. CIV. P. 56(b) . . . the jurisdictional inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal citations and marks omitted).

While it is true that a district court must resolve all questions of fact in favor of the plaintiff, there must be some dispute of fact before the court can resolve that fact in the plaintiff's favor. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). When a defendant's affidavits are not disputed by the plaintiff, the court "cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.* Also, a district court must resolve any uncertainties as to the controlling substantive state law in favor of the plaintiff. *See*, *e.g.*, *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176-77 (5th Cir. 1968); *Dudley v. Community Public Service Co.*, 105 F.2d 119, 123 (5th Cir. 1939).

It follows from the foregoing propositions that a defendant's burden when seeking to establish fraudulent joinder is a heavy one: "where a plaintiff states <u>even a colorable claim</u> against the resident defendant, joinder is proper and the case should be remanded to state court." *Pacheco De Perez*, 139 F.3d at 1380 (emphasis supplied) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)); *see also Coker*, 709 F.2d at 1440-41 ("If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the

resident defendants, the federal court *must find* that joinder was proper and remand to that state court.") (emphasis added); *B., Inc.*, 663 F.2d at 549 ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."). In short, a plaintiff need not "have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).

A "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542. Ultimately, however, a federal court must be certain of its jurisdiction before "embarking upon a safari in search of a judgment on the merits." *Crowe*, 113 F.3d at 1538.

## 1. Alabama law regarding a claim for underinsured/uninsured motorist coverage.

In order to ascertain whether Alfa was fraudulently joined, the court must determine whether Plaintiff had, at the time the notice of removal was filed, a potentially viable claim against the non-diverse defendant, construing any uncertainties in the substantive law in Plaintiff's favor. Here, in Count V of his state court Complaint, Plaintiff pled a claim against Alfa for underinsured/uninsured motorist coverage under Alabama law.

"Alabama's uninsured-motorist statute, Ala. Code 1975, § 32-7-23, provides protection for 'persons . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.'" *Ex parte State Farm Mut. Auto. Ins. Co.*, 893 So. 2d 1111, 1115 (Ala. 2004); *see also Toole v. Chupp*, 456 F. Supp. 2d 1218, 1219 (M.D. Ala. 2006) (same).  To assert a claim against one's insurer, "[t]he plaintiff is not required to first obtain a judgment against the uninsured/underinsured motorist." *Id.* (citing *State Farm Fire & Cas. Co. v. Lambert*, 285 So.2d 917, 919 (Ala. 1973)).[11] Under Alabama law, a plaintiff wishing to avail himself of the protections of § 31-7-23 must take one of two paths when commencing a lawsuit against the driver of the allegedly uninsured or underinsured vehicle.  "In *Lowe v. Nationwide Insurance Co.*, 521 So.2d 1309, 1310 (Ala. 1988),[12] [the Alabama Supreme Court] established a process for balancing the rights of the [underinsured/uninsured] insurer and its insured by (1) requiring that the [underinsured/uninsured] insurer be notified of, or

---

[11] In other words, Alabama law allows for a direct action against an underinsured/uninsured motorist carrier even before the liability has been established or subrogation has attached.  This is in contrast to Tennessee law, which will be discussed more fully *infra*.

[12] "The issue in *Lowe* was whether an insured may file a claim for underinsured motorist coverage against his or her own insurer in the same lawsuit with the insured's claim against the underinsured motorist and litigate all the issues in one proceeding." *Fox v. Hollar Co., Inc.*, 576 So. 2d 223, 226 (Ala. 1991).  The Alabama Supreme Court answered the question "in the affirmative."  *Id.*

joined as a party in, the action against the alleged tortfeasor and (2) allowing the [underinsured/uninsured] carrier to elect whether to participate in that action. Regardless of whether it elects to participate, the [underinsured/uninsured] insurer would be bound by the determination of the fact-finder as to liability and damages." *Ex parte Morgan*, 13 So. 3d 385, 388 (Ala. 2009) (emphasis in original omitted).

With this backdrop, the court will consider the Removing Defendants' arguments that Plaintiff's claim against Alfa for underinsured/uninsured coverage is untenable or openly fraudulent such that it constitutes a fraudulent joinder.

### 2.    The Removing Defendants' arguments

The Removing Defendants' arguments that Alfa was fraudulently joined can be distilled into two parts: (1) the Eleventh Circuit's decision in *Broyles v. Bayless*, 878 F.2d 1400 (11th Cir. 1989), universally mandates that the citizenship of an underinsured/uninsured motorist insurance carrier cannot be considered for purposes of defeating diversity jurisdiction; and (2) Plaintiff cannot possibly succeed in its claim against Alfa due to the fact that underinsured motorist benefits will not come into play in this case because the Removing Defendants have $193 million in insurance coverage available to them.  Each argument will be addressed in turn.

The Removing Defendants assume a great deal in their reliance on *Broyles*. The *Broyles* decision has been summarized by the United States District Court for the

Middle District of Alabama as follows:

In *Broyles v. Bayless*, 878 F.2d 1400 (1989), . . . a Tennessee plaintiff sued a Georgia defendant in a Georgia federal court, basing jurisdiction on complete diversity and asserting claims arising of a car accident in Tennessee; the Tennessee plaintiff also served a copy of his lawsuit on his Tennessee uninsured motorist carrier, and, as allowed by Tennessee law, that carrier participated in the Georgia federal court, including filing a motion to dismiss which contended that the court lacked diversity jurisdiction because the carrier and the plaintiff were from the same State. The trial court agreed and dismissed the lawsuit. On appeal, the Eleventh Circuit stated the question as, "Should a federal court consider the residence of an uninsured motorist carrier, served with process pursuant to Tennessee's uninsured motorist statute, when determining diversity for federal jurisdiction purposes?" *Broyles*, 878 F.2d at 1401.

In answering this question, the Broyles court observed that, "Because the Tennessee courts place the uninsured motorist carrier in the same position as that of the tortfeasor's own insurer, [the uninsured motorist carrier's] status as a party turns on the same principles as are generally applied in liability insurance law." *Broyles*, 878 F.2d at 1403. The court then discussed and applied these general principles of liability insurance law.

First, the *Broyles* court observed that, "In general, a real party in interest is a party that has a real and substantial stake in the litigation and who exercises substantial control over the litigation."[13] *Broyles*, 878

---

[13] The definition of a "real party in interest" employed by the Eleventh Circuit in *Broyles* requires two elements: (1) that the party have a "real and substantial stake in the litigation"; and (2) that the party exercise "substantial control over the litigation." *Broyles*, 878 F.2d at 1403. The second element of that definition first appears in *Broyles*, and is seemingly novel to that case and its progeny. Traditionally, a real party in interest must have only "a direct, substantial, legally protectable interest in the proceedings." *Purcell v. BankAtlantic Financial Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996) (quoting *Worlds v. Dept. of Health and Rehabilitative Serv.*, 929 F.2d 591, 594 (11th Cir. 1991) (per curiam). Moreover, there are areas of the law in which a party plays no part whatsoever in the defense or prosecution of a civil action; yet, such a party is nevertheless a real party in interest. *See*, *e.g.*, *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) ("The United States is the real party in

F.2d at 1403. "The definition of a 'real party in interest,' however, breaks down," the court continued, "in the area of insurance law because of the courts' historic treatment of insurance companies in tort litigation." *Id.* at 1403-1404. The court stated that, "Although liability insurance companies often have a real and substantial stake in their insured's litigation, they are usually not treated as parties to an action involving their insured . . . even though the company has a contractual obligation to pay for the litigation and/or to pay any judgment rendered." *Id.* at 1404. "[I]n the typical scenario, insurance companies defend the insured 'in cognito' so as to preserve [their] anonymity and remain undetected by the jury." *Id.* The court then concluded that, "It makes little sense to allow the company to proceed 'in cognito' and yet consider its phantom presence in determining diversity." *Id.* at 1405.

To these general principles of liability insurance law, the *Broyles* court outlined three exceptions that focused on the company's visibility in and control over the tort suit: "[(1) where the insurance companies] have become subrogated to the rights of their insured after payment of the loss, [(2)] are defending actions brought directly against them, or [(3)], for some reason, they must assume primary and visible control of the litigation." *Id.* at 1404. The *Broyles* court then held that, because none of the above exceptions applied to the case at hand, the uninsured motorist carrier was a nominal party and thus the trial court had diversity jurisdiction. *Id.* at 1405-1406.

*Toole v. Chupp*, 456 F. Supp. 2d 1218, 1220-21 (M.D. Ala. 2006) (footnotes omitted).

The Removing Defendants contend that the holding in *Broyles* is universal in its scope and that it stands for the proposition that "the parties involved in the accident, not the insurance company, should define the local and interstate nature of

---

interest in a *qui tam* action under the False Claims Act even if it is not controlling the litigation.") (quoting *United States ex rel. Walker v. R&F Properties of Lack County, Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005)).

the action . . . '[u]nless the insurance company interjects itself into the controversy in such a way that it has direct liability and/or active, visible and primary control of the litigation, its citizenship should not be considered for purposes of diversity jurisdiction.'" (doc. 1, p.4 (quoting *Broyles*, 878 F.2d at 1406).  In essence, it is the Removing Defendants' position that *Broyles* should be read such that Alfa's actions (*i.e.*, whether to opt out[14] or to substantially participate in the litigation) will determine whether its citizenship should considered, and, indeed, whether this court has subject matter jurisdiction over this controversy.  There are several factual and legal issues that separate *Broyles* from the present action.  Moreover, the Removing Defendants' argument stands directly contrary to established binding precedent and public policy.

In short, *Broyles* is distinguishable from this case to the extent that it does not constitute binding precedent with regard to the issues before this court.  As an initial

---

[14] Interestingly, Alfa did not unconditionally opt out of this case.  To the contrary,

ALFA Mutual Insurance Company agrees to be bound by the jury's verdict on the issues of liability and damages, subject to the limits of its applicable underinsured motorist coverage. ALFA Mutual Insurance Company does not agree to be bound by any consent judgment or settlement agreement, if any, which may be hereinafter agreed upon or entered into by the other parties to this action, to the extent same would adversely affect ALFA's interest and, therefore, ALFA reserves the right of participation at trial in the event a settlement agreement is reached between the plaintiff and the co-defendants.

(doc. 8, pp.2-3).

matter, *Broyles* is not a fraudulent joinder case.  Rather, the *Broyles* court was determining whether the insurance company at issue was a nominal party.[15]  *See* 878 F.2d at 1405-06.  Also, the present case was removed from state court.  *Broyles* was commenced in federal court; therefore, the plaintiff had the burden to establish jurisdiction whereas, as stated previously, here the removing defendants have the burden to establish jurisdiction.  Moreover, the very detailed question before the Eleventh Circuit in *Broyles* dealt with Tennessee law.  In the area of a plaintiff's claim against his or her uninsured motorist carrier, Alabama law differs from Tennessee law in several substantive ways.  As noted in *Toole*, "unlike Tennessee law . . . Alabama law provides for an action in which the uninsured motorist carrier may be sued independently from the tortfeasor," and "'[t]he plaintiff is not required to first obtain a judgment against the uninsured/underinsured motorist" before proceeding against the insurer.  *Toole*, 456 F. Supp. 2d at 1221 n.4.[16]  These differences are not

---

[15] *See* discussion on "nominal parties," *infra*.

[16] Interestingly, the *Toole* court decided that the observations and conclusions in *Broyles*

> apply with equal force to Alabama's liability insurance law, for Alabama, like Tennessee, sets forth a scheme that allows insurance companies to defend the insured 'in cognito' by requiring the insured to give notice to the insurer and allowing the insurer the option of participating in the litigation. While the Tennessee and Alabama insurance schemes may differ in some ways, they are sufficiently the same that the above principles and exceptions, as they are articulated in *Broyles*, apply to Alabama's.

*Toole v. Chupp*, 456 F. Supp. 2d 1218, 1221 (M.D. Ala. 2006).  *Toole* has only been followed

negligible and render the *Broyles* opinion inapposite when applied to the relevant Alabama, not Tennessee, law.

Most important, however, is that this court would fun afoul of binding precedent if it adopted the Removing Defendants' argument with regard to *Broyles*. In essence, the Removing Defendants argue that Alfa, through its actions, can confer or strip subject matter jurisdiction.   Stated another way, it is the Removing Defendants' position that Alfa, <u>a party to this case</u>, has it within its power to control the jurisdiction of this court.   That result simply cannot be allowed.   "Jurisdiction cannot be conferred by a hypothetical."   *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (citing *Diefenthal v. Civil Aeronautics Board*, 681 F.2d 1039, 1052 (5th Cir. 1982) ("Jurisdiction is not conferred by the stroke of a lawyer's pen.   When challenged, it must be adequately founded in fact.")).   Moreover, parties cannot confer subject matter jurisdiction on a federal court by consent or agreement. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456

---

twice on this point by one judge of the Middle District of Alabama.  *See Tompkins v. Craft*, Case No. 2:08-cv-826-WHA, 2008 WL 5381250 (M.D. Ala. Dec. 22, 2008); *Oliver v. Rodriguez*, Case No. 2:08-cv-0081-WHA, 2008 WL 928328 (M.D. Ala. Apr. 4, 2008).  Because of the differences between Alabama and Tennessee law, as well as the conflict with Supreme Court authority that following *Broyles* would create in the present case, the conclusion in *Toole* is not persuasive to this court.

U.S. 694, 701-02 (1982);[17] *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17-18

& n.17 (1951); *Raymon v. Alvord Independent School District*, 639 F.2d 257 (5th Cir.

1981) ("However eager the suitors may be to litigate in federal court, they cannot

confer jurisdiction by consent."). "Subject matter jurisdiction is conferred and

defined by statute." *Morrison*, 228 F.3d at 1261. Also, it would violate public policy

if a party to a lawsuit could manipulate federal subject matter jurisdiction through its

unilateral actions.  Accordingly, Alfa's participation or lack of participation in this

case while it was in state court does not and cannot have an impact on the issue of

federal subject matter jurisdiction.

---

[17] In *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), the Supreme Court held that:

> Federal courts are courts of limited jurisdiction.  The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1.  Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction.  Again, this reflects the constitutional source of federal judicial power.  Apart from this Court, that power only exists "in such inferior Courts as the Congress may from time to time ordain and establish."  Art. III, § 1.

> Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign.  *Certain legal consequences directly follow from this.  For example, no action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant, . . ., principles of estoppel do not apply, . . ., and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.*  Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on it own motion. . . .

*Id.* at 701-02 (emphasis supplied) (case citations omitted).

The Removing Defendants' argument that Plaintiff cannot recover an amount in damages in excess of the Removing Defendants' insurance coverage (thereby triggering coverage under Alfa's policy) is likewise due to be rejected.   The Removing Defendants argue that, in order to state a cognizable claim for uninsured/underinsured motorist coverage under Alabama law, "Plaintiff must first prove liability against [the Removing Defendants], and then he must prove that his damages exceed the amount of coverage provided to [the Removing Defendants]. (doc. 1, p.5).   They do not cite to any legal authority.   The Removing Defendants' argument is incorrect on two points.   First, at the initial pleadings stage, a Plaintiff is not required to "prove" anything.   A Plaintiff must simply make allegations in good faith.   *See* FED. R. CIV. P. 8(a).   Second, the Removing Defendants misstate the law on a crucial point: A plaintiff asserting a claim for uninsured/underinsured motorist coverage under Alabama law need not first establish liability before bringing the claim against his insurer.   *See State Farm Fire & Cas. Co. v. Lambert*, 285 So.2d 917, 919 (Ala. 1973).   In this case, Plaintiff has properly pled a claim against Alfa under Alabama law.   Proof of that claim is a matter that the court need not consider at the initial pleadings stage.

Insofar as the Removing Defendants posit that Plaintiff cannot maintain a cause of action against Alfa because underinsured motorist coverage will never be triggered

in this case, that point fails for lack of an evidentiary basis and, even if there were a sufficient evidentiary basis, this court will not apply a remittitur analysis to a case prior to verdict.

The Removing Defendants represent that they have approximately $193 million in insurance coverage available to them with regard the claims in this lawsuit. The only evidence of record to support that claim is the affidavit of Alison Heim, the Finance Director for Schneider National Carriers, Inc. (doc. 1, p.97). In short, Ms. Heim states that her review of certain insurance policies reveals that "up to $193,000,000" is available to cover the claims raised against the Removing Defendants. This affidavit was not controverted by evidence from Plaintiff. That fact notwithstanding, however, Ms. Heim's affidavit is nothing more than an a party defendant's employee's sworn account of her personal assessment of certain insurance policies. The court finds that the affidavit fails for lack of personal knowledge. Also, there is no evidence that the Removing Defendants have filed any sort of claim with their insurers or otherwise made them aware of this lawsuit. Assuming the insurers have been notified of this litigation, there is no evidence before this court that the Removing Defendants' insurers have consented to pay any damages awarded in this case, nor that the insurers agree with Ms. Heim's extraordinary estimation of the amount of coverage available to the Removing

Defendants.   The insurers might very well challenge coverage, or there is the possibility that the policy amounts stated by Ms. Heim are incorrect.   In any event, Ms. Heim refers to various insurance policies and other documents in her affidavit that have not been attached for the court's review.   For that reason, Ms. Heim's affidavit is afforded little weight.   *See*, *e.g.*, FED. R. CIV. P. 56(e) (an affidavit in support of or opposition to a motion for summary judgment that refers to "a paper or part of a paper" must be appended with "a certified copy" of the paper).   Also, Ms. Heim's affidavit is being introduced to show the amount in controversy.   Because Ms. Heim's affidavit is being offered for that purpose, and it is not a paper received from the Plaintiff, this court cannot consider the affidavit.   *See Lowery*, 483 F.3d at 1213.

As previously stated, it is the Removing Defendants' burden to show that, at the time of removal, Plaintiff fraudulently joined Alfa for the sole purpose of defeating diversity jurisdiction.   Under the facts of this case at the time of removal, the Removing Defendants failed to demonstrate by clear and convincing evidence that Plaintiff did not state a plausible claim of uninsured/underinsured motorist coverage against Alfa.   Because Alfa is a proper defendant to this case under Alabama law, and the Removing Defendants have not shown that Plaintiff's claim fits within the framework of *Triggs*, *supra*, the court finds that the Removing Defendants have not met their heavy burden of showing that Alfa is a fraudulently joined defendant.

## B.    Alfa is not a nominal party.

A "nominal party" is

> A party to an action who has no control over it and no financial interest in its outcome; esp., a party who has some immaterial interest in the subject matter of a lawsuit and who will not be affected by any judgment, but who is nonetheless joined in the lawsuit to avoid procedural defects.

BLACK'S LAW DICTIONARY 1154 (8th ed. 2004).  "The question of whether or not a named defendant is a nominal party depends on the facts in each case."  *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, Intern. Printing Pressmen and Assistants' Union of North America*, 427 F.2d 325, 327 (5th Cir. 1970).  "The ultimate test of whether the defendants are indispensable parties is whether in the absence of the (defendant), the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff."  *Id.* (citation omitted) (parenthetical text in original).  Stated differently, "[t]he test of whether or not a named defendant is a nominal party is if his role in the lawsuit is that of a depositary or stakeholder."  *Id.*  (citation and marks omitted).[18]

---

[18] Under the Eleventh Circuit's decision in *Broyles*, the relevant inquiry to determine if a non-diverse insurer is a nominal party is whether the insurer is a real party in interest.  *See* 878 F.2d at 1403-04.  As discussed *supra*, *Broyles* is distinguishable from this action.  Moreover, it was not an *en banc* decision, and, therefore, cannot overrule the former-Fifth Circuit's decision in *Tri-Cities Newspaper's Inc.* with regard to the proper test for determining whether a party is "nominal."  *Broyles* seems to employ a much more stringent standard than that stated in *Tri-*

The facts regarding Alfa's participation or importance to this litigation was unknown at the time of removal. Alfa had not entered an appearance in the state court action. Therefore, this court does not rely on the unsubstantiated speculation of the Removing Defendant's counsel in the Notice of Removal that Alfa would not defend against Plaintiff's claim and would opt out of the lawsuit. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). In short, the Removing Defendants have not met their burden to show that Alfa could not be considered a "nominal party" to this case as of the date of removal.[19] Construing all facts in Plaintiff's favor, the court will not assume that Alfa's relationship to this case is "nominal."

---

*Cities Newspapers Inc.* as well as an additional element to the definition of a "real party in interest." Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), to the extent that *Broyles* is inconsistent with *Tri-Cities Newspapers Inc.*, this court is bound to follow the nominal party test set forth in the earlier decision.

Nevertheless, assuming *arguendo* that *Broyles* is applicable to this action insofar as that decision speaks to situations when an underinsured/uninsured insurer is a nominal party, the court finds that this case meets one of the three exceptions outlined in *Broyles*. In this case, as of the date of removal, Plaintiff was participating in a direct action, as allowed under Alabama law, against Alfa. *Broyles*, 878 F.2d at 1403 (an insurer is not a nominal party where its insured is pursuing a direct action against it). Consequently, Alfa is not a nominal party whose citizenship can be disregarded for diversity jurisdiction purposes.

[19] Alfa's conditional opt out of this litigation seemingly has no jurisdictional significance. Once the court remands this action to state court, if Alfa maintains its position that it intends to conditionally or unconditionally opt out of this lawsuit, it stands to reason that such a decision does not render Alfa a "nominal party" for jurisdictional purposes in light of the clear Supreme Court precedent that a party's actions cannot give rise to federal jurisdiction where it does not otherwise exist. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982).

**III.    Conclusion**

For the reasons stated herein, this court reconsiders and departs from the Orders denying Plaintiff's Motion to Remand and Motion for Reconsideration.  The court does not have subject matter over this dispute, and this action will be remanded to the Circuit Court of Jefferson County, Alabama, in an Order to be entered contemporaneously herewith.

**DONE** this 19th day of January, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge